**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHESTER BELBACK, | ) Civil Action No. 2: 17-cv-1222 |
| Plaintiff, | ) |
| | ) |
| v. | ) Chief United States Magistrate Judge |
| | ) Cynthia Reed Eddy |
| JOSEPH BARNER, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Presently before the Court is Defendant's Motion for Summary Judgment. (ECF No. 36). For the reasons set forth below, the motion for summary judgment will be granted.

### Procedural Background

Plaintiff, Chester Belback ("Plaintiff" or "Belback"), is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") currently confined at SCI-Forest.  The events giving rise to this lawsuit occurred while Belback was incarcerated at SCI-Greene. Belback alleges that the lone defendant, Officer Joseph Barner ("Barner), violated his constitutional rights as secured by Eighth Amendment by engaging in sexual harassment. Specifically, Belback alleges that he was subjected to sexual harassment by Barner during routine pat searches during the month of June 2016, and when Officer Barner poked Belback's buttocks with a pen on July 6, 2016.

Discovery has closed and Barner now moves for summary judgment. Barner has filed in support of his motion a brief, (ECF No. 37), an appendix of record evidence (ECF No. 38), and a

---

[1]      In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. *See* ECF Nos. 6 and 15.

concise statement of undisputed material facts (ECF No. 39). In response, Belback has filed a brief in opposition to the motion for summary judgment with an appendix of record evidence (ECF No. 48). The matter is fully briefed and ripe for disposition.

Relevant Factual Background

On July 6, 2016, Belback and Barner were in the maintenance work area. Belback was standing at a nut and bolt cabinet with his supervisor, Mr. Bland. The cabinet was to the right of a desk where Barner was sitting. According to Plaintiff's deposition testimony:

> I remember getting up and going over to the cabinet. And as me and Mr. Bland were talking is when I felt a poke in my back side, which at first I thought - - I didn't know if it was his hand or his pen, because I wasn't facing [Barner]. And then I turned around, and I pointed to Barner, and I said, "Did you just touch me in the ass?" And he was denying it saying, "No, no."

> I started to walk away. And I said, "I know you touched me. I told you before not to touch me like that." He said, "I didn't touch you."

> And I was aggravated. And I went back to the end of the desk. It's like when somebody is lying to you, I got a sarcastic grin on my face, and I laughed at him. I told him, "I'm not imaging you touching me. I felt you touch me. It wasn't my imagination." That is when he said, "it was my pen," and put it towards my back side again.

> I said, "You know what, you are on camera this time. I'm done with you. I told you before not to put your hands on me like that inappropriately." And I walked away. And I went back to the - - I leaned back against the desk.

> Then he is claiming that I knocked his papers over, but I never knocked any of his papers over.

> . . .

> He poked me. He says he was trying to get me to move. He never told me to move of his line of sight. None of that ever occurred.

Pl's Depo. at 31 - 32 (ECF No. 38-3).

Based on this incident, Belback filed a complaint pursuant to the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 30301, *et seq*. (ECF No. 48-1 at 1). The PREA investigation

determined that Belback's allegations had been "substantiated" and found that Barner's contact with Belback was unprofessional in nature and unrelated to official duties. As a result, a "local separation" between Belback and Barner was put in place. (ECF No. 48). Belback was subsequently transferred to SCI-Forest.

In his Declaration, Barner admits that his pen made contact with Belback's clothing, but states that he used the pen to direct Belback to move out of the way "and in no way was meant to be a sexually suggestive or inappropriate gesture." Declaration of Joseph Barner, at ¶¶ 8-9 (ECF No. 38-2). Further, Barner states that he never has inappropriately touched an inmate during a pat search, that Belback never complained to him about feeling uncomfortable during any of the pat searches that Barner conducted, and that Barner was not aware of any inmates voicing complaints about the way Barner conducted pat searches. *Id.* at ¶¶ 12 - 14.

Standard of Review

The standard for assessing a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). The moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact. *See Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992).

This standard is somewhat relaxed with respect to *pro se* litigants. Where a party is representing himself *pro se,* the complaint is to be construed liberally. A *pro se* plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986) ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS,* 214 F.3d 402, 407 (3d Cir. 2000); *see also Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment.").

In order to survive a motion for summary judgment on a § 1983 claim, a plaintiff must adduce evidence that the defendants acted under color of state law and that the plaintiff was deprived of a right, privilege, or immunity secured by the Constitution or federal law. *See Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255–56 (3d Cir. 1994). It is not disputed that Barner

was acting under the color of state law.  Therefore, the issue is whether Barner violated Belback's Eighth Amendment rights.

Discussion

The United States Court of Appeals for the Third Circuit, joining several other circuits, recently held that sexual abuse of prisoners by prison officials can violate the Eighth Amendment.  *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018).  In so holding, the appellate court noted that the "sexual abuse of prisoners, once overlooked as a distasteful blight on the prison system, offends our most basic principles of just punishment" and "invades the most basic of dignity interests:  to be treated as a human being" and is "not part of the penalty that criminal offenders pay for the offenses against society."  *Id.* at 473, 474 (quoting *Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997)).

In *Ricks*, the appellate court clarified that "a single incident, if sufficiently serious or severe, can run afoul of the Eighth Amendment as surely as can multiple, less egregious incidents."  *Id.* at 477.  In that connection, the appellate court declined to adopt a bright-line rule as to when sexual contact will violate the Eighth Amendment and instead instructed that the district court should conduct a "contextual, fact-specific" inquiry, which considers "[t]he scope, place, and timing of the offensive conduct."  *Id*. at 478.

The framework for analyzing whether a claim alleging that a prisoner has been sexually abused by a corrections officer rises to the level of an Eighth Amendment violation consists of a two-part analysis consisting of objective and subjective components. The objective element is satisfied only if the incident in question is "objectively, sufficiently intolerable and cruel, capable of causing harm . . . ."  *Id*. at 475.  When evaluating the objective element, the Supreme Court has warned that "not . . . every malevolent touch by a prison guard gives rise to a federal action."

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Rather, in contrast to common tort law, the Eighth Amendment shields inmates from only those actions 'repugnant to the conscience of mankind'." *Ricks*, 891 F.3d at 475-76 (quoting *Hudson*, 503 U.S. at 10). "The objective element 'is therefore contextual and responsive to 'contemporary standards of decency'." *Ricks,* 891 F.3d at 476 (citations omitted). "And 'conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional'." *Id.* (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

The subjective element inquires "whether the official had a legitimate penological purpose or if he or she acted 'maliciously and sadistically for the very purpose of causing harm'." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)).

Belback describes Barner's actions as sexually suggestive. But this description is tempered by the video footage of the incident provided to the Court. In *Scott v. Harris*, the Supreme Court reiterated that the facts must be viewed in the light most favorable to the plaintiff on a motion for summary judgment, but held that the court of appeals "should have viewed the facts in the light depicted by the videotape." -- U.S. --, 127 S.Ct. 1769, 1776 (2007). The Supreme Court, in *Scott*, held that the plaintiff's version of events was "utterly discredited" by the video and therefore "blatantly contradicted by the record." Our court of appeals has cited *Scott* and "relied on the videotapes, where possible, to state the facts of [the] case." *Green v. N.J. State Police*, 246 F. App'x 158, 159 n.1. (3d Cir. 2007). Accordingly, the Court has used the videotape that is part of the summary judgment record to supplement Belback's description of the event and finds that his characterization of the contact as sexually suggestive is contradicted by the video.

The video shows Belback walking over to a cabinet. Within seconds, a hand holding a pen is visible and appears to touch Plaintiff's shirt in the lower back area. Belback is then seen walking out of camera view, but then comes back and points at the camera with a smile. Several seconds letter, Barner is seen walking past the camera, appearing to be on his way out of the maintenance area. Approximately a second later, Barner is seen putting papers close to Belback's face, while Belback laughs. Belback is then seen taking a few steps before exiting the camera view. (ECF No. 38-1).

In an attempt to demonstrate a pattern of behavior, Belback asserts that during certain routine pat searches conducted in June of 2016, Barner acted inappropriately by squeezing Belback's cheek and grabbing his buttocks. However, it is undisputed that Belback never filed a grievance and did not report Barner's actions to appropriate personnel within the prison, other than allegedly making comments to Barner. (Pl's Depo at 17, 22). Belback acknowledges that there is no evidence to support his allegations of Barner's past behavior other than his own beliefs and impressions. As such, Belback cannot establish "repetitive" sexual abuse.

Having considered the record, including the videotape evidence, pertinent case law, "the scope, place, and timing of the offensive conduct," *Ricks,* 891 F.3d at 478, the Court concludes that Barner's actions in touching Belback's buttocks with a pencil do not rise to the level of a constitutional violation. Barner's behavior, while certainly inappropriate and unprofessional, was far less egregious than the allegations addressed in many cases in which the actions of prison officials were far more offensive and were found to be insufficient to support a cognizable Eighth Amendment claim. *See, e.g., McIntyre v. Kellinger*, 741 F. App'x 891 (3d Cir. July 16, 2018) (holding that incident in which defendant dragged his hands down plaintiff's buttocks, gripped his buttocks, patted his thighs, and "squeezed [his] ass as if [he] was a woman" while

whispering "in a sexual manner" during a pat-search was not objectively severe or serious to establish an Eighth Amendment violation); *Ricks,* 891 F.3d at 479 (suggesting that an "isolated, momentary" incident in which guard "rubbed his erect penis against [plaintiff's] buttocks through both men's clothing" was not sufficiently severe, but allowing an opportunity to amend); *Hughes v. Smith*, 237 F. App'x 756, 759 (3d Cir. 2007) (no Eighth Amendment violation where correctional officer allegedly touched the inmate's testicles through his clothing during a single pat-down frisk); *Kareem v. Diraimo*, No. 1:17-cv-237, 2018 WL 6788524 (W.D.Pa. Dec. 26, 2018) (no Eighth Amendment violation where correctional officer placed his hands inside of plaintiff's boxer shorts, stroked his penis once, and grabbed his scrotum during a random pat search.); *Watson v. Wingard*, No. 3:16-cv-0055, 2018 WL 2108316 (W.D. Pa. Jan. 31, 2018) (allegations that defendant gave plaintiff an "upper cut" to the groin with his forearm, "groped and massaged [his] penis," and examined plaintiff's "butt . . . like a doctor" did not amount to sexual abuse), *report and recommendation adopted by* 2018 WL 2107773 (W.D.Pa. May 07, 2018).

Nor does Barner's conduct fall within the examples of misconduct identified in *Ricks. See Ricks*, 891 F.3d at 478 (defining serious sexual contact to include "sexualized fondling, coerced sexual activity, combinations of going harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline."). *Id.* Barner's inappropriate behavior does not in any way trivialize the mistreatment Belback allegedly experienced. But such behavior does not amount to a cognizable constitutional violation.

Accordingly, under applicable legal standards, the Court finds that Plaintiff has failed to establish that he experienced conduct that was "repugnant to the conscience of mankind" or that the alleged violation took place under circumstances that suggest a "culpable state of mind."

*Ricks*, at 475. Because Plaintiff cannot satisfy either element of his Eighth Amendment claim, summary judgment is appropriate.

**III**.    **Conclusion**

For all these reasons, Defendant's Motion for Summary Judgment will be granted. Judgment will be entered in favor of Defendant and against Plaintiff.    An appropriate order follows.

Dated: February 12, 2019

s/Cynthia Reed Eddy
Cynthia Reed Eddy
Chief United States Magistrate Judge

cc:    CHESTER BELBACK
        MA7223
        SCI Forest
        PO Box 945
        Marienville, PA 16239
        (via U.S. First Class Mail)

        Yana L. Warshafsky
        Office of the Attorney General
        (via ECF electronic notification)